**ALS SCAN, INC. Plaintiff**

v.

**Robert WILKINS, Alternative Products, Inc. and Digital Service Consultants, Inc. Defendants**

**No. CIV H–01–496.**

United States District Court,
D. Maryland.

May 18, 2001.

Robert L. Lombardo, Law Office, Columbia, MD, for ALS Scan, Inc.

Linda S. Woolf, Goodell DeVries Leech and Dann LLP, Baltimore, MD, Andrea Muller, Benjamin I Fink, Freed and Berman PC, Atlanta, GA, for Robert Wilkins, Alternative Products, Inc., Digital Service Consultants, Inc.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Senior District Judge.

This civil action has been brought under the Federal Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act"). Plaintiff ALS Scan, Inc. ("ALS Scan") is engaged in the business of creating and marketing adult photographs for the Internet. Named as defendants are Robert Wilkins ("Wilkins"), Alternative Products, Inc. ("Alternative Products") and Digital Service Consultants, Inc. ("Digital").

It is alleged in the complaint that defendants have infringed plaintiff's copyrights by publishing plaintiff's copyrighted photographic images on the Internet and by offering them for sale in Maryland via the Internet through memberships to defendants' website. Plaintiff seeks statutory damages and other relief under the Copyright Act.

Presently pending before the Court is a motion to dismiss the complaint filed by defendant Digital. In support of that motion, defendant Digital contends that it does not have sufficient contacts with the State of Maryland to provide this Court with personal jurisdiction over it. Memoranda and exhibits in support of and in opposition to this motion have been filed by plaintiff and by defendant Digital.

Following its review of the pleadings, memoranda and exhibits, this Court has concluded that no hearing is necessary for a decision on the pending motion. *See* Local Rule 105.6. For the reasons stated herein, the motion to dismiss of defendant Digital will be granted.

### I

### *Background Facts*

As alleged in the complaint, the facts are as follows. Plaintiff ALS Scan is a Maryland corporation with an office in Columbia, Maryland. Defendant Digital is incorporated under the laws of the State of Georgia and has its only place of business in that State. ALS Scan is engaged in the

business of creating and marketing adult photographs for the Internet, including original pictures of female models. Plaintiff's products are marketed throughout the United States. All of its photographs are copyrighted and contain the name "ALS Scan" as well as a copyright symbol.

Defendants Wilkins and Alternative Products have created a website on the Internet with the domain name "abpefarc.net." Defendant Digital is an Internet service provider, and its services enable defendants Wilkins and Alternative Products to publish plaintiff's copyrighted photographs throughout the Internet.

According to the complaint, defendants Wilkins and Alternative Products have appropriated copies of hundreds of plaintiff's copyrighted images and have used those images to create their own website and gain membership and advertising revenue by displaying plaintiff's copyrighted photographs on their website. It is alleged that defendant Digital "enables" the other two defendants to publish plaintiff's copyrighted photographs throughout the Internet. According to the complaint, defendants have infringed and are infringing upon plaintiff's copyrights within Maryland and elsewhere by selling, publishing and/or displaying plaintiff's copyrighted photographs.[1]

## II

### Applicable Principles of Law

Under Rule 12(b)(2), F.R.Civ.P., a civil action is subject to dismissal if the forum court lacks the requisite personal jurisdiction. In support of its motion to dismiss, defendant Digital argues that it is not subject to either the specific jurisdiction or the general jurisdiction of this Court by virtue of any activities within Maryland.

Personal jurisdiction over a non-resident defendant may be exercised by this Court (1) if authorized by Maryland's Long Arm statute, Md.Code Ann. Cts. & Jud. Proc. § 6–103 and (2) if a defendant has "minimum contacts" in Maryland such that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. *Atlantech Distrib., Inc. v. Credit General Ins. Co.*, 30 F.Supp.2d 534, 536 (D.Md.1998). Once a defendant raises a Rule 12(b)(2) defense, the plaintiff bears the burden of proving that the court can exercise personal jurisdiction over the defendant. *Atlantech*, 30 F.Supp.2d at 536.

A court may exercise either specific or general jurisdiction over a defendant. Specific jurisdiction exists where the claim arises out of the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction permits a court to subject a non-resident defendant to a suit in the forum wholly unrelated to any contacts in the forum which resulted in the creation of the claim. General jurisdiction exists only when the foreign defendant's in-state activities amount to "continuous and systematic" contact with the state. *Id.* at 414–15, 104 S.Ct. 1868.

Applying these principles to the circumstances of this case, this Court concludes that it has neither specific nor general jurisdiction over plaintiff's claim against defendant Digital. Digital does not engage in any continuous and systematic ac-

---

1. Since defendant Digital's pending motion will be granted based upon this Court's lack of *in personam* jurisdiction, it is not necessary to determine whether Digital's conduct as an internet service provider satisfies the safe harbor provisions of the Digital Millennium Copyright Act, 17 U.S.C. § 512.

tivities within Maryland, and there is no evidence that plaintiff's claim arises out of any contacts which Digital may have with Maryland. Accordingly, Digital's motion to dismiss will be granted.

## III

### *Discussion*

Under § 6–103(b)(4) of Maryland's Long Arm statute, a defendant's contacts with Maryland must be extensive, continuous and systematic before the defendant can be held to be subject to general jurisdiction in a Maryland court. *Nichols v. G.D. Searle & Co.*, 783 F.Supp. 233, 236–37 (D.Md.1992), *aff'd* 991 F.2d 1195 (4th Cir. 1993). For this Court to be empowered to assert personal jurisdiction over Digital, the Court must find that (1) Digital has certain minimum contacts or ties to Maryland such that (2) maintenance of plaintiff's claim would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ While the exercise of specific jurisdiction must also be consistent with considerations of constitutional due process, *see Cape v. von Maur*, 932 F.Supp. 124, 127 (D.Md.1996) and *Nichols*, 783 F.Supp. at 241, the level of minimum contacts necessary to confer specific jurisdiction is significantly lower than that required for general jurisdiction. *See Atlantech*, 30 F.Supp.2d at 536 (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997)). Specific jurisdiction exists when the "contacts related to the cause of action ... create a 'substantial connection' with the forum state ...." *ESAB Group*, 126 F.3d at 625 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct.

199, 2 L.Ed.2d 223 (1957)). The defendant's activities must be purposefully directed at the forum state "in more than a random, fortuitous, or attenuated way." *ESAB Group*, 126 F.3d at 625 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

As established by the affidavit of Robert Tidwell, Digital's Chief Executive Officer, this Georgia corporation maintains a website that is accessible to the public through the worldwide web on the Internet at "dscga.com." According to Tidwell, this website contains no means for any person to enter into a contract or otherwise transact business with Digital. Digital conducts no business in and has no offices in Maryland. Tidwell has stated that Digital has not entered into contracts with persons or entities in Maryland and derives no income from clients or business in this State. According to Tidwell, Digital owns no property in Maryland and does not advertise in this State other than indirectly through its website.

The supplemental affidavit of Tidwell along with exhibits submitted by plaintiff indicate that defendant Alternative is the registered owner of the abpefarc.net website, which is the only website that allegedly contained plaintiff's copyrighted material.[2] Alternative owns and controls the servers that host this website and maintains control over the files which remain on these servers, including the files with the infringing images. The record also indicates that Alternative, as the registered owner of the website, is the entity respon-

---

**2.** The supplemental affidavit of Tidwell was submitted by Digital with its reply to plain- tiff's opposition to Digital's motion.

sible for selling membership subscriptions to this website for a fee.

Defendant Digital provides Internet connectivity services to business customers in the southeastern United States, and Digital is not affiliated with Alternative in any manner. Digital merely provides upstream bandwidth service to Alternative as one of its many business customers. Digital does not support the abpefarc.net website and has not received any proceeds from subscriptions to the website. Digital has never had any involvement with the selection and posting of pictures on Alternative's website and has never obtained or published any photographs of which plaintiff claims copyright ownership. According to Tidwell, neither he nor anyone else associated with Digital was even aware of the existence of ALS Scan at the time that the allegedly infringing material was posted. He states that there consequently could not have ever been any intent by him or by anyone else at Digital to harm plaintiff.

In opposing Digital's motion, plaintiff contends that even though defendant Digital is not present in Maryland, its admitted website efforts throughout the United States and in Maryland constitute a "persistent course of conduct in the State" under § 6–103(b)(4). Plaintiff makes three separate arguments in support of this broad contention. First, it is claimed that Digital has purposefully availed itself of the benefits and protections of Maryland law through both dscga.com, its corporate website, and the abpefarc.net website owned by Alternative. Second, plaintiff claims that Digital's contacts with Maryland by way of these websites are substantial enough for Digital to

reasonably expect to be haled into a Maryland court. Third, it is contended that this litigation arises out of activities which Digital intentionally directed at Maryland residents through these websites and that Digital therefore had fair warning that it might be subject to jurisdiction in Maryland. In sum, plaintiff argues that as a result of Digital's website activities, the due process clause would not be offended if this Court exercised jurisdiction over the claim asserted by plaintiff in the complaint. This Court must disagree.

In a letter addressed to the Court on April 17, 2001, plaintiff's attorney requested that the Court set a scheduling conference to discuss whether plaintiff might be permitted to conduct limited discovery on the sole issue of personal jurisdiction. No such request was made in plaintiff's opposition to Digital's pending motion to dismiss. Rather, in that opposition, plaintiff argued that Digital's motion to dismiss should be denied based on the affidavits and exhibits submitted by the parties in support of and in opposition to the motion.

Following its review of the affidavits and exhibits submitted by the parties, the Court has concluded that the facts pertaining to the jurisdictional issue before it have now been fully and fairly developed. Were the Court to permit plaintiff to conduct limited discovery, not only would the parties be undertaking discovery procedures but further briefing would also be necessary, and a decision on the pending motion would be delayed for many months. Defendant Digital is entitled to a prompt ruling on its motion, and the considerable delay sought by the plaintiff is not appropriate under the circumstances here.[3] Plaintiff's request that it be permitted to

---

**3.** This case has already been delayed because plaintiff has not as yet effected service of process on defendants Wilkins and Alternative Products. This suit was filed on February 16, 2001, and plaintiff should promptly serve these defendants with process to avoid the later dismissal of the action pursuant to Rule 4(m), F.R.Civ.P.

conduct limited discovery will therefore be denied.

■ When a motion challenging personal jurisdiction is decided without an evidentiary hearing, all reasonable inferences must be resolved in the plaintiff's favor. *See Cape,* 932 F.Supp. at 126; (citing *Mylan Laboratories, Inc. v. Akzo,* 2 F.3d 56, 60 (4th Cir.1993)). Applying this principle to the present record which includes affidavits from both the President of plaintiff ALS Scan and the CEO of defendant Digital, the Court is satisfied that any additional information developed by way of discovery would not affect this Court's determination that Digital is not subject to either the specific or the general jurisdiction of this Court under the claim against it alleged in the complaint.

Most cases involving the effect of Internet websites on issues of personal jurisdiction have addressed only the existence of specific jurisdiction. *See Coastal Video Communications Corp. v. The Staywell Corp.,* 59 F.Supp.2d 562, 570 n. 6 (E.D.Va. 1999) (citing cases). In this case, plaintiff has not attempted to distinguish between specific and general jurisdiction. Rather, plaintiff has merely argued that Digital's contacts with Maryland are so wide and varied that it should be subject to the personal jurisdiction of this Court. Plaintiff has, however, conceded that this case does not concern the dscga.com website, but rather arises as a result of the abpefarc.net website. To the extent that specific jurisdiction may exist here, it must therefore be based upon the abpefarc.net website, inasmuch as specific jurisdiction arises only from contacts related to the claim or cause of action. *See Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *ESAB Group,* 126 F.3d at 623. However, if general jurisdiction exists it may be based upon either the abpefarc.net website or the dscga.com website, because general juris-

diction may arise from contacts of any kind as long as they constitute continuous and systematic activity in the forum state. *See Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *Nichols,* 783 F.Supp. at 237.

Although the law regarding electronic commerce jurisdiction is still evolving, many courts, including this one, have addressed this issue by evaluating Internet websites along a spectrum, ranging from active websites at one end to passive websites at the other. *See, e.g., Virtuality L.L.C. v. Bata Ltd.,* 138 F.Supp.2d 677, 684 (D.Md. Apr.3, 2001); *Atlantech,* 30 F.Supp.2d at 537; *see also Roche v. Worldwide Media, Inc.,* 90 F.Supp.2d 714, 717 (E.D.Va.2000); *Coastal Video,* 59 F.Supp.2d at 570–72; *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997). Active sites involve situations where the defendant clearly does business over the Internet. *Zippo Mfg.,* 952 F.Supp. at 1124; *Virtuality,* 138 F.Supp.2d at 684. If the defendant enters into contracts with residents of a foreign jurisdiction which involve the knowing and repeated transmission of files over the Internet to such residents, then personal jurisdiction is proper. *Id.* A passive website merely makes information available on the Internet without imposing any conditions upon accessibility and without affording Internet users any means of contracting with the defendant. *Id.; see also Atlantech,* 30 F.Supp.2d at 537. Since a passive site does little more than make information available to interested persons, the mere ability to access a passive website from within the forum is not grounds for the exercise of personal jurisdiction over a non-resident defendant. *Virtuality,* 138 F.Supp.2d at 684.

Based upon the record here, including facts pertaining to the scope of defendant Digital's traditional business operations, this Court concludes that Digital's dscga.

com website is passive rather than active in nature. Although Digital uses this website for advertising, for providing customer services and for soliciting employees, there is no indication in the record that the existence of this website has ever directly affected Maryland or its residents. Digital does not sell products nor conduct any other commercial activity for profit over the Internet. Moreover, Digital provides services to customers mainly in the southeastern United States and has never consciously directed any of its activities at Maryland residents nor purposefully availed itself of the benefits and protections of Maryland law. As a result, neither Digital's advertising nor its customer service operations have any substantial connection with this forum. While it may be possible for a Maryland resident to use the dscga.com website to communicate with Digital and obtain information about job opportunities, the record does not indicate that a single Maryland resident has ever done so. Accordingly, this Court concludes that the existence of the dscga.com website does not provide sufficiently "continuous and systematic" contacts between Digital and the State of Maryland for this Court to constitutionally assert general *in personam* jurisdiction over Digital. *See Atlantech*, 30 F.Supp.2d at 537.

Relying upon *Inset Systems, Inc. v. Instruction Set*, 937 F.Supp. 161 (D.Conn. 1996), and *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo.1996), plaintiff argues that general jurisdiction does exist here merely because the dscga.com website permits Digital to advertise within Maryland and to solicit employees from within Maryland. This argument will be rejected in light of holdings both by this Court and by the Fourth Circuit in *Nichols*, 783 F.Supp. 233; aff'd 991 F.2d 1195. *See also Millennium Enterprises, Inc. v. Millennium Music LP*, 33 F.Supp.2d 907, 921 (D.Or.1999) (declining to follow both *Inset* and *Maritz* ). In *Nichols*, the Fourth Circuit stated that "broad constructions of general jurisdiction should be generally disfavored," 991 F.2d at 1200. Applying that principle, the Court in *Nichols* determined that general *in personam* jurisdiction could not be asserted over a corporate defendant based on activities much more extensive than any undertaken by Digital in Maryland. *Id.; see also Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir.1971) (holding that the presence within the forum of defendant's advertisements, employees and an agent for service of process does not confer general jurisdiction over the defendant); *accord Coastal Video*, 59 F.Supp.2d at 566 ("It is not sufficient [for jurisdictional purposes] that the product may have been advertised in Virginia, either over the World Wide Web, or through mail order catalogs.") (citing *ESAB Group*, 126 F.3d at 625).

Moreover, the mere placement of a website on the Internet creating the possibility that it might be accessed by an individual in Maryland is not an activity that is sufficiently directed toward the forum state to satisfy the requirements of due process in a case like this one. *See Rannoch, Inc. v. The Rannoch Corp.*, 52 F.Supp.2d 681, 685 (E.D.Va.1999); *see also Virtuality*, 138 F.Supp.2d at 684. To conclude otherwise would subject every defendant with an Internet website to "general personal jurisdiction in every jurisdiction in the country, thereby allowing a plaintiff to sue it for any matter anywhere in the nation. This the constitution does not permit." *Atlantech*, 30 F.Supp.2d at 537; *see also Roche*, 90 F.Supp.2d at 719. In sum, the Court is satisfied that the existence of defendant Digital's dscga.com website in its present form does not confer this Court with general personal jurisdiction over Digital.

This Court's analysis of jurisdictional issues arising as a result of the abpefarc.net Internet website is somewhat different because that website is not owned and operated by defendant Digital. It is the abpefarc.net website, however, which allegedly contained plaintiff ALS Scan's copyrighted material. The record here indicates that Digital has no control over the content of this website and has never received any proceeds from subscribers to this website. Digital's connection with the abpefarc.net website arises only as a result of services provided by it to defendant Alternative, the entity which is responsible for creating and maintaining this website. Accordingly, the Court concludes that the abpefarc.net website does not provide sufficiently continuous and systematic contacts between Digital and the State of Maryland to support this Court's constitutional exercise of general jurisdiction over Digital.

■ Plaintiff has also presented several arguments in support of its further contention that specific personal jurisdiction exists over Digital based upon the abpefarc.net website. There is no merit to any of these arguments. Digital has not, as claimed, purposefully availed itself of the benefits and protections of Maryland's laws by creating obligations owed to Maryland residents by way of the abpefarc.net website. Nor did Digital, on the facts here, ever have a reasonable expectation of being haled into court in Maryland due to any general knowledge that the abpefarc.net website was being accessed in Maryland. Finally, the Court is satisfied on the record here that Digital did not purposefully direct its activities toward Maryland through the abpefarc.net website, knowing that such conduct would have a harmful effect upon plaintiff ALS Scan within Maryland. Indeed, Digital did not even know of the existence of ALS Scan at the time that the allegedly infringing materials were posted on that website.

Specific personal jurisdiction must be based upon the defendant's substantial connection with the forum by way of contacts related to the cause of action. In this case, the only clear nexus which either ALS Scan or Digital had with Maryland is that plaintiff ALS Scan conducts its business operations here. Such a contact standing alone "is legally insufficient" for the exercise of specific personal jurisdiction. *Cape*, 932 F.Supp. at 128 (citing *Sibert v. Flint*, 564 F.Supp. 1524, 1529 (D.Md.1983); *see also ESAB Group*, 126 F.3d at 625–26).

### IV

### Conclusion

For all the reasons stated, this Court will grant the motion to dismiss of defendant Digital. Accordingly, it is this 18th day of May, 2001 by the United States District Court for the District of Maryland..